UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER Y. SELBY,

      Plaintiff,

v.                                             Case No:   6:13-cv-684-Orl-31TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION

The Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under the Act.

I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, the administrative record, the transcript of the hearing, and the pleadings and memoranda submitted by the parties.   For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background

Plaintiff filed for disability insurance benefits on July 22, 2011, alleging disability beginning September 1, 2010 due to pulmonary embolism with hypertension, Von Willebrand disease,[1]  right shoulder rotator cuff tendinitis, lumbar spine degenerative disc

_____

[1] "Von Willebrand disease is a condition that can cause extended or excessive bleeding. The condition is most often inherited but in rare cases may develop later in life."  Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/von-willebrand-disease/basics/definition/con-20030195 (June 19, 2014).

disease, and bilateral metatarsalgia.   (Tr. 68, 140, 161).   Plaintiff was 45 years old on

the date of the ALJ decision.   (Tr. 140). He completed college and served in the United

States Air Force for about 20 years as a budgetary clerk.   (Tr. 50, 162).   His application

was denied initially and on reconsideration.   (Tr. 3-7, 11-27).   On March 8, 2012, at

Plaintiff's request, a hearing was held before the ALJ who issued her decision on March

29, 2012.   (Tr. 14-23, 28-54).   On February 28, 2013, the Appeals Counsel denied

Plaintiff's timely request for review. (Tr. 3-5).   Plaintiff has exhausted his administrative

remedies and this case is now ripe for consideration under 42 U.S.C. § 405(g).

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-

step sequential evaluation process established by the Commissioner and set forth in 20

C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).   Specifically, the ALJ must determine

whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an

impairment or combination of impairments that meets or medically equals an impairment

listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work;

and (5) retains the ability to perform any work in the national economy.   See Phillips v.

Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).   The claimant bears the burden of

persuasion through step four and, at step five, the burden shifts to the Commissioner.

Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined at step one that Plaintiff had not engaged in substantial

gainful activity since September 1, 2010, his alleged onset date.   (Tr. 16).   At step two,

the ALJ found that Plaintiff suffered from the following severe impairments: history of

pulmonary embolism and deep vein thrombosis; pulmonary hypertension; mild plantar

fasciitis on the right, bilateral metatarsalgia; mild bilateral pes planus; and bilateral

retrocalcaneal entresophytes.   (Id.).   At step three, the ALJ found that Plaintiff did not

have an impairment or impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).   (Tr. 17).   The ALJ also determined Plaintiff's residual functional capacity.   (Tr. 17-22).   At step four, the ALJ decided that Plaintiff was capable of performing his past relevant work as a budgetary clerk.   (Tr. 22).   The ALJ ultimately found that Plaintiff had not been under a disability within the meaning of the Act from his alleged onset date of September 1, 2010 through March 29, 2012, the date of the ALJ's decision.   (Tr. 22-23).

### Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.   Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla but less than a preponderance.   It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."   Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"   Id.   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979

F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

1.  Plaintiff's Residual Functional Capacity is Based on Substantial Evidence

The ALJ determined the following residual functional capacity assessment for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk 4 hours total in an 8-hour workday, and sit 6 hours total in an 8-hour workday. He must avoid all exposure to fumes, odors, dust, gases and other pulmonary irritants.

(Tr. 17).   Plaintiff argues that the ALJ's determination of his residual functional capacity is not based on substantial evidence.   (Doc. 11 at 10-11).   He complains that "[t]he record contains no medical opinions to support the residual functional capacity" and that "[t]he case is unusual in that the Disability Determination Service never sent Plaintiff for a standard consultative examination."   (Doc. 11 at 10).   Plaintiff does not elaborate on his objection to the residual functional capacity assessment and never identifies any evidence he believes contradicts the ALJ's determination.   Still, he alleges that the ALJ impermissibly acted as both judge and physician in this case.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   Lewis v. Callahan, 125 F3d. 1436, 1440 (11th Cir. 1997); see also 20 CFR § 404.1545.   The determination "is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments."   Beech v. Apfel, 100 F. Supp.2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).   In

determining a claimant's residual functional capacity, the ALJ must consider all of the medical evidence of record.   It is not necessary that the claimant's residual functional capacity be based on a medical source opinion.   See Argo v. Colvin, No. 6:13-cv-817-JEO, 2014 WL 1765952, at *2 (N.D. Ala. April 29, 2014) ("Because the overall RFC determination is 'based on all the relevant evidence in [the claimant's] case record, the ALJ can fulfill his responsibility to develop the record even without a medical source opinion.   Thus, as long as the ALJ's determination is based on substantial evidence, the absence of an RFC assessment by a medial source will not render the ALJ's RFC determination invalid.") (internal citations omitted); see also Green v. Soc. Sec. Admin, 223 F. App'x 915, 924 (11th Cir. 2007).   The ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."   Hamby v. Comm'r of Soc. Sec. Admin., No. 11-11455, 2012 WL 2547174, at *2 (11th Cir. July 3, 2012) (quoting Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007)).

Here, the ALJ provided a detailed analysis of Plaintiff's diagnoses, treatment history, and diagnostic results, which generally showed problems with the lumbar spine and feet, and a history of deep vein thrombosis and pulmonary embolism as the basis for the ALJ's finding of Plaintiff's residual functional capacity.   See (Tr. 17-22).   Thus, the ALJ properly exercised her authority and responsibility to evaluate the evidence and determine Plaintiff's residual functional capacity, and the ALJ did not act as both judge and physician.   Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

2.  The ALJ Properly Evaluated Plaintiff's Pain Testimony

Plaintiff argues that the ALJ failed to correctly apply the Eleventh Circuit's pain standard when discrediting his pain testimony, in violation of SSR 96-7P.   (Doc. 11).   In

response, Defendant maintains substantial evidence supports the ALJ's findings that

Plaintiff's statements were not fully credible and her finding is consistent with SSR 96-7P

and the Eleventh Circuit's pain standard. (Doc. 14).

In the Eleventh Circuit, "[i]n order to establish a disability based on testimony of

pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:

(1) evidence of an underlying medical condition; and (2) either (a) objective medical

evidence confirming the severity of the alleged pain; or (b) that the objectively determined

medical condition can reasonably be expected to give rise to the claimed pain." Wilson

v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221,

1223 (11th Cir. 1991)); Singleton v. Comm'r Soc. Sec., No. 6:12-cv-683-Orl-GJK, 2013

WL 5236678, at *5 (M.D. Fla. Sept. 17, 2013); see also SSR 96-7P, 1996 WL 374186, at

* 2 (July 2, 1996).   Under the law, "[i]f the ALJ discredits subjective testimony, [s]he must

articulate explicit and adequate reasons for doing so." Id.

It is apparent from the ALJ's decision that she considered all the evidence.   While

the ALJ found that Plaintiff's impairments could reasonably be expected to cause his

alleged symptoms, the ALJ concluded that Plaintiff's testimony concerning the intensity,

persistence, and limiting effects of his symptoms was not credible to the extent it was

inconsistent with his residual functional capacity assessment.   (Tr. 20-21).   In making

her credibility determination, the ALJ explained that:

> The claimant's testimony is not supported/inconsistent with
> the medical evidence of record, activities of daily living are
> inconsistent with complaints/allegations, strong pain
> medication were not prescribed, claimant was non-compliant
> with treatment/medication, treatment has been
> conservative/non-aggressive and medication evidence of
> records fails to confirm subjective severity of condition.

(Tr. 21).   The ALJ also concluded that the objective medical evidence did not support

Plaintiff's allegations of pain:

The objective medical evidence indicates that despite a history of pulmonary embolism diagnosed in 2005 with embolism noted in the lower extremity in 2010, as well as a history of pulmonary hypertension and complaints of shortness of breath, an examination from June 3, 2010, showed claimant appeared in no acute distress, CN II-XIII was grossly intact, there was regular heart rate and rhythm and the lungs were clear to auscultation.   Although there was some swelling of the right lower extremity noted, gait was normal, Moreover medical records dated June 8, 2010, indicated claimant presented on pulmonary follow up reporting feeling very good.   Examination of the lungs have been basically benign throughout.

Additionally, a pulmonary function test performed on June 16, 2010, was normal. A chest x-ray from November 2010, revealed negative findings and claimant himself denied any chest pain or shortness of breath during an examination in July 2011.   A review of claimant's hypercoagulable workup on November 16, 2010, indicated that claimant's blood work did not show any obvious abnormalities consistent with an underlying hypercoagulable disorder.   Moreover, a spirometry function study from September 2011 revealed only moderate restriction.   The undersigned notes that there is no indication of continued outpatient treatment or hospitalizations for symptoms of shortness of breath.

In terms of painful feet, the medical evidence shows that despite complaints of mild plantar fasciitis on the right; bilateral metatarsalgia and mild bilateral pes planus, an examination in June 2010, showed only mild pronation of the right foot, very mild swelling of the right ankle, mild pain of the lower right leg and tenderness of the plantar surface of the right foot.   Additionally, claimant appeared to be in no acute distress and, in fact, appeared very fit.   Gait, ankle average range of motion and strength were symmetrical and unremarkable.   In addition, despite complaints of foot pain in August 2010, an examination showed normal movement of all the extremities and gait and stance remained normal. Examinations through 2011 showed intact balance and normal unassisted gait.   X-rays of the left and right ankle, 3 views, from November 2010, were negative.   An x-ray of the bilateral feet dated September 19, 2011, revealed bilateral retrocalcaneal enthesophytes and mild bilateral pes planus.

The undersigned notes that claimant testified to complaints of right shoulder pain that radiated up his neck.   Medical records indicated that in January 2012, claimant presented complaining of right shoulder pain for the last few months

> despite conservative measures and steroid injection.   An x-ray of the right shoulder, 3 views, from November 29, 2010, was negative.   An x-ray of the left shoulder was negative. An x-ray of the right shoulder, 3 views, dated January 9, 2012, revealed inferior spurring at the acromioclavicular joint, but there was no fracture or dislocation.   The glenoid was intact. Physical therapy was recommended and performed through February 2012. Outpatient notes showed that claimant reported decreased neck and shoulder pain with ongoing physical therapy, which consisted of cervical traction.

(Tr. 21-22).

In challenging the ALJ's decision, Plaintiff relies on medical records from September 2006 and April 2008.   (Doc. 11 at 14-15).   But, Plaintiff's alleged onset date is September 1, 2010.   See (Tr.16).   Plaintiff's reliance on these earlier medical records is misplaced because that evidence pre-dates the relevant period.   See Jones v. Astrue, No. 5:09-cv-387 (MTT), 2010 WL 4682813, at *5 (M.D. Ga. July 29, 2010) ("As to the medical opinions of Dr. Bramlett, it appears that the records submitted do not relate to the relevant time period, as they are all dated prior to Claimant's onset date of January 1, 2005.   The ALJ, therefore, could not have erred in failing to address Dr. Bramlett's opinions."); McCray-Keller v. Colvin, No. 2:12-cv-674-EFB, 2013 WL 5467201, at *9 (E.D. Cal. Sept. 30, 2013) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) (finding that an ALJ properly rejected evidence on the ground that it was not probative because it was prior to the relevant time period)).

The law permits an ALJ to consider evidence prior to the onset date of disability if that evidence "sheds light on the disability during the relevant time period."   Jensen v. Colving, No. 2:13-cv-803, 2014 WL 2159050, at *3 (D. Utah May 23, 2014).   As the Court in Chiles v. Colvin explained:

> [T]o make the record 'complete,' the regulations permit the claimant to submit medical evidence from the 12 months preceding his application date, 'unless there is a reason to believe that development of an earlier period is necessary …'

> SSR 83-20 provides examples of the 'instances where it is necessary to establish that disability has existed for several consecutive months … *immediately prior to the date of filing,'* including where 'medical documentation prior to application date is relevant to an assessment of severity/duration in the impairment category involved, e.g., myocardial infarction, cirrhosis, certain mental conditions, or for some dual title II-XVI claims where an earlier onset must be established for the title II claim.

Civil Action No. 3:12-cv-3516-L-BH, 2014 WL 630888, at * (N.D. Tex Feb. 18, 2014) (emphasis in original) (internal citations omitted).    Plaintiff's case is distinguished from Chiles because here, Plaintiff did not argue that consideration of the material from 2006 and 2008 would shed any light on the severity or duration of his impairment.    Instead, Plaintiff offers the old medical records to show the existence of diagnoses of chronic thromboembolism, shortness of breath, multiple pulmonary embolisms, and DVT.   See (Doc. 11 at 14-15).   However, simply listing diagnoses does not give the Court any insight into the severity of Plaintiff's limitations or his ability to perform substantial gainful activity.    The relevant inquiry is the *degree* to which a claimant's condition limits his ability to engage in substantial gainful activity.   See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of ... impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's determination in that regard."); 20 C.F. R. § 404.1545(a) (The "residual functional capacity is the most you can still do despite your limitations."); Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A] 'mere diagnosis . . . says nothing about the severity of the condition . . . [D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition'") (internal citations omitted). Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

3.   The Evidence Does Not Establish that Lisa Smith Is A Treating Physician

Plaintiff argues that the ALJ failed to give controlling weight to the opinion of treating physician Lisa Smith.   (Doc. 11 at 18-20).   Defendant disputes Plaintiff's contention that Lisa Smith is a physician, and the evidence does not establish Plaintiff's claim.   (Doc. 14 at 12-15).   Ms. Smith's name appears after the designation "Provider," along with the letters "CPT." (Id.).   There is nothing in the record, and Plaintiff has not pointed to any evidence, that establishes that she is a physician.   What appears more likely from the context of the therapeutic advice is that Ms. Smith is a physical therapist. On June 18, 2010, she advised Plaintiff to (a) maintain frequent mobility every 30 minutes while traveling or sitting, (b) keep his right lower extremity elevated above the hip when seated, (c) move his ankle to alleviate edema and to keep blood circulating; and (d) wear compressive hose during the day.   (Tr. 718).

The ALJ accounted for Ms. Smith's therapeutic recommendation in developing Plaintiff's residual functional capacity.   See (Tr. 18).   Still, a physical therapist is not a treating physician and is not an "acceptable medical source" whose opinion is entitled to substantial weight.   See Castro v. Barnhart, 119 F. App'x 840, 842 (8th Cir. 2005); Burbo v. Comm'r Soc. Sec., No. 10-2016, 2011 U.S. App. LEXIS 26143, at *3-4 (6th Cir. 2011) ("therapists are not physicians and are not medical sources under the regulations."). Plaintiff has not offered any evidence to establish that Ms. Smith is a physician or that the ALJ's decision concerning her opinion was based on anything less than substantial evidence.   Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

4.   The ALJ's Treatment of the VA's Disability Decision Was Not Erroneous

On April 1, 2011, the Veteran's Administration awarded Plaintiff 100% disability from September 1, 2010, based upon findings of pulmonary embolism with hypertension

and Von Willebrand Disease (also claimed as hypoxia, dyspnea, right pulmonary nodule, left pulmonary nodule, and heart condition with palpitations).   (Tr. 614).   Plaintiff argues that the ALJ failed to provide a sufficient justification for not according great weight to the VA's disability rating.   (Doc. 11 at 20).   A VA determination that a claimant is disabled is not a medical opinion from a treating source or an acceptable source and is not entitled to controlling weight or special consideration on that basis.   See 20 C.F.R. §§ 404.1502 (defining treating source); 404.1513(a) (defining acceptable medical sources); see also SSR 06-03p, 2006 WL 2329939 (S.S.A.) ("only 'acceptable medical sources' can give us medical opinions" and "only 'acceptable medical sources' can be considered treating sources … whose medical opinions may be entitled to controlling weight.").   Still, while not binding, a disability rating from the VA is evidence that should be afforded great weight by the ALJ.   See Olson v. Schweiker, 663 F.2d 593, 597 n.4 (5th Cir. 1981)[2].

However, the ALJ's evaluation of a VA disability decision need not be explicit. Kemp v. Astrue, 308 F. App'x 423, 426 (11th Cir. 2009).   Here, the ALJ never expressly states the amount of weight given to the VA's disability decision.   But, as in Kemp, the ALJ expressly considered the VA medical evaluations and disability rating in the residual functional capacity analysis and relied on the VA's medical records and diagnoses to determine that Plaintiff's allegations of Von Willebrand Disease and right shoulder rotator cuff tendonitis were not severe impairments.   (Tr. 16-22).[3]   Accordingly, I conclude that the ALJ "implicitly found that the VA disability ratings were entitled to great weight" and

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[3] In determining whether Plaintiff could still work despite his acknowledged disability, the ALJ ultimately evaluated Plaintiff's application for disability insurance benefits according to standards established by the Administration and concluded that Plaintiff "is not so disabled as to be unable to perform any work activity." See (Tr. 19, 21).

respectfully recommend that the district court reject Plaintiff's argument in this regard. Kemp, 308 F. App'x at 426.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1.      The Commissioner's final decision in this case be **AFFIRMED**

2.      The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on July 15, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record
Any Unrepresented Parties